Charles Weldon WILLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 86 194 CR.

Court of Appeals of Texas, Beaumont.

Aug. 26, 1987.

Discretionary Review Granted Dec. 9, 1987.

G. Patrick Black, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

The Appellant was indicted in April of 1986 for the alleged criminal offense of aggravated robbery. The indictment set out that Willis, in the course of committing theft of property which was owned by S.V., had the intent to obtain and maintain control over the property and did intentionally and knowingly threaten and place the said S.V., the Complainant, in fear of imminent bodily injury and death by using and exhibiting a deadly weapon: a firearm. There was one enhancement paragraph to the effect that the Appellant had been finally convicted of the felony of robbery on November 1, 1984, in the 351st District Court of Harris County.

Later the Appellant filed a motion to consolidate his case with that of another defendant. It was alleged that the indicted offenses arose out of the same criminal episode and occurrence. The motion to consolidate was granted by the trial judge. Our Appellant pleaded guilty before a jury on September 16, 1986.[1] The other defendant, Steven F. Austin, pleaded not guilty. However, during the trial, Steven F. Austin changed his plea to one of guilty pursuant to a plea bargain agreement entered into

with the prosecution. The trial of the cause then proceeded further as to the Appellant Willis. The jury assessed punishment at ninety-nine years in the Texas Department of Corrections, also assessing a $10,000.00 fine. On September 17, 1986, the Appellant was duly sentenced and gave a written notice of appeal. Appellant concedes that it was after entering the plea of guilty twice that the jury's punishment was assessed at ninety-nine years in the Texas Department of Corrections. Appellant repeated his guilty plea after proper admonitions.

The Appellant, in an able brief, groups together his first three points of error as a reasonable grouping. Appellant concedes and, indeed, argues that the first three points involve "essentially the same issue." In brief summary, the first three points say that the trial court erred (1) in violating TEX.R.CRIM.EVID. 403 because certain evidence came before the jury that created unfair prejudice against the defendant and the probative force or probative value was substantially outweighed by the unfair prejudice; (2) in denying the Appellant's motion for mistrial because the prosecutor endeavored to get before the jury, by inference, evidence that was not admissible; and (3) the State failed to prove that the specific extraneous offense was in fact a "final conviction."

The objectionable evidence in all three situations allegedly took place during the cross-examination of one Samantha Pilgreen, a witness called by the defendant Austin. Samantha testified that Austin was her stepfather and that she had known him about three years; that she had, along with her mother, moved into his house; that Samantha and her mother lived in Austin's house for a few months, probably four months. Then they moved out. The moving out took place "last December." Referring to Austin she was asked:

"Q. Do you know where he was between those two times?

"A. He had went to prison.

---

[1]. It should be noted that the court carefully admonished Appellant Willis concerning his plea of guilty which he made in open court with his attorney of record standing beside him.

"Q. Do you know where?

"A. No.

"Q. Is that here in Texas?

"A. I think so.

"Q. Do you know if he went to prison with anybody?

"MR. BLACK: Objection, Your Honor. It's not being material or relevant.

"THE COURT: Sustained.

"Q. Okay.

"MR. O'FIEL: Your Honor, I would object to the whole line of question, along those lines. For me to get up here and have to object on the grounds that we're trying to keep something from the jury is nothing but the Prosecutor goaded me into doing that, and requesting a mistrial, and I think that's the position I was placed in and that's why I remained silent until this time. We would certainly ask for a mistrial because they have goaded us into making that objection at this time, after she's answered the question.

"THE COURT: I will treat your comments, as—initially as an objection. To that extent, that's sustained. The jury is instructed to disregard that testimony. Your request for a mistrial will be taken under advisement, and each of you be prepared to show whatever Authority you have in the morning, as to why it should or should not be granted. Go on with your question."

We now must bear in mind that each of the three points of error is based on the trial court's committing error in denying the Appellant's motion for mistrial.

TEX.R.CRIM.EVID. 403, entitled "Exclusion of Relevant Evidence on Special Grounds," provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

We note that no answer was given to the question either before or after the objection by Mr. Black. In our opinion, under this record, there was no danger of unfair prejudice since the name of Appellant Willis was never mentioned. Also, Willis had pleaded "guilty" twice.

The prosecutor took the position generally that it was his intention to find out the truth of all of the statements to which the witnesses were testifying. Mr. Black later made a motion for mistrial on behalf of Charles Willis on the grounds that the State of Texas had elicited testimony that Austin had previously been to prison. And then, for a second time, Mr. Black stressed that:

"Immediately thereafter the Assistant District Attorney, Mr. Hoffer, asked, 'Do you know if he went to prison with anyone?'"

Bearing in mind that Appellant Willis' name was never mentioned and bearing in mind that the judge properly and unequivocally instructed the jury to disregard that testimony, we do not see error, certainly not reversible error based on TEX.R.CRIM. EVID. 403. We certainly see no confusion of the issues or misleading of the jury because there was simply no answer given.

There was certain other testimony elicited by way of cross-examination of Mrs. Austin. The prosecutor asked Mrs. Austin when the Appellant was released from a halfway house. At that point, no objection was lodged by the defense to the question or to the answer, nor was there a motion to strike.

We find the following in the record:

"Q. Did you and Mr. Austin, in fact, go with Mr. Willis to the Bayou Club?

"A. Uh-huh; yes, sir.

"Q. Can you tell us what happened at the Bayou Club after you got there?

"A. Right after I got there—well, as we were getting out Chuck gave Steve some money he owed him, and then Steve gave me fifty cents, and we were going in the door—we were going in the back door. We had parked in the back, and he gave me fifty cents.

"He said, 'I'll get the beer and you go rack up the balls,' so I went and racked up the pool balls and Chuck went and

stood by the little counter thing by the front door, and Steve went and got the beer.

"When he brought the beer back to us he said he had to go to the bathroom, and just about the time I got through racking the balls is when some guy came in and he got in Chuck's face and was screaming at him that he had done it and he was the one.

"Q. Excuse me. Let me stop you there. You say someone got in Chuck's face. You're talking about Mr. Willis?

"A. Yes.

"Q. Is this someone a police officer or someone—

"A. Just a guy, little guy. I was sitting there. He was a little bitty guy, I guess. Compared to Chuck he was.

"He was—he had his finger in his face.

"Q. What happened after that?

"A. Chuck was just standing there and then about when the guy was hollering that I think it was about five Port Arthur cops. I didn't know it was Port Arthur at the time.

"There were guys dressed in looked like greenish uniforms. I don't know if it was the light or what. I hadn't ever seen those before. I knew that Bridge City was black suits, and five of them jumped on him and handcuffed him."

Upon cross-examination, she repeated that she was Mrs. Austin, Steve Austin's wife, having married Steven F. Austin on April 10th, while he was in jail. She testified that earlier in the day, before they went to the Bayou Club, she stopped by the Star Stop Grocery to buy two twelve-packs of beer.

"Q. Whose car is that silver Thunderbird?

"A. Steve's.

"Q. How long has he had it?

"A. I don't know, sir. I know he's had it—(interrupted).

"Q. As long as you—

"A. No. He got it during the time that we were—in between times that we had seen each other.

"Q. Okay.

"A. After I had split up—we had split up, he got it sometimes after that. I don't know.

"Q. How long did Chuck live with you?

"A. About five weeks, maybe. I don't know exact dates. I know he got out February—end of February, something like that.

"Q. When you say, 'he got out' what do you mean by that?

"A. He was in a halfway house.

"Q. Who was?

"A. Chuck was.

"Q. That's the defendant Willis?

"A. Yes, sir.

"Q. That was at the end of February?

"A. Somewhere at the end.

\* \* \* \* \* \*

"Q. Okay. Did you ever knew—how was it that the defendant Willis came to your house?

"A. I helped him, give him a place to stay, to sleep and food to eat and until he got a job.

"Q. Did you work at that halfway house?

"A. No.

"Q. How did you meet him?

"A. How did I meet him?

"Q. Uh-huh.

"A. I didn't meet him until he got out.

"Q. Of the halfway house?

"A. I had never seen him before."

No objection was made to the entirety of this testimony.

In view of the record, we do not see that harmful, reversible error is shown by the first three points of error. Of course, what the prosecutor's inner thoughts and motivations were we cannot perceive with certainty. The district judge declined to declare a mistrial. We think he was in a superior position to pass upon the credibility of the prosecutor's statements when the record was made in detail outside the presence of the jury.

The record as presented to us simply fails to show an actual extraneous offense. There were no objections leveled at the testimony of Mrs. Austin that the Appel-

lant had gotten out of a halfway house. It is axiomatic in this situation that an objection is necessary to preserve error for appellate review. *Crocker v. State*, 573 S.W.2d 190 (Tex.Crim.App.1978). Of course, it should be borne in mind that the State was in possession and, indeed, introduced into evidence a certain penitentiary packet which tended to prove the offense alleged in the enhancement paragraph of the indictment. Admittedly, it was introduced at the punishment stage, but it was a reasonable background of information for the prosecutor to test Samantha Pilgreen's memory of events, her credibility, and her truthfulness. There is no showing by the question, standing alone, which was properly objected to and disallowed, that this Appellant before us had been to prison at a prior time.

It should be noted also that when Mr. Hoffer, the Assistant District Attorney, was cross-examined about his motives for the questions to Samantha, questions were directed to him concerning whether or not Mr. Austin—not our Appellant here—had been incarcerated in the last couple of years. We find no meaningful reference in this dialogue that addressed itself to Appellant Willis. Indeed, Mr. Hoffer professed repeatedly and, indeed, continues to contend that his intention was to find out the truth of all the statements to which the witnesses had been testifying and to elicit certain responses from one of the family members, being a younger family member, as to what she knew and as to what the other witnesses knew and had talked about on the stand. The trial judge accepted this explanation. Again, the district judge was in a better position to pass upon this matter. He observed the behavior, tenor, acts, emotions, and general demeanor and facial expressions of the witnesses and of the attorneys involved.

Again, the entire bill of exception involving the intentions and motivations of Mr. Hoffer was directed toward the whereabouts of Mr. Austin who is not our Appellant. Of course, the State did have a right to attempt to prove this witness's possible bias or prejudice in the case or even her ability to remember facts correctly in order to adequately test her credibility. *Jackson v. State*, 482 S.W.2d 864 (Tex.Crim.App. 1972).

■ In the next point of error the Appellant says that the District Attorney made an improper plea for law enforcement. Having read all of the arguments made by both parties, we find no merit in this point of error. The same is overruled. We decide that it was a reasonable summation of the evidence with certain reasonable deductions and conclusions and inferences from the evidence, as well as a permissible plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973). We decide that the prosecutor in his final argument did not ask the members of the jury to place themselves in the "shoes of the victim"; nor did he ask the members of the jury actually to place themselves in the "shoes of the witnesses." The fourth point of error is overruled.

■ No objection was leveled at the court's final charge to the jury. We decide that the Appellant had a fair and impartial trial after reviewing the whole record. No "egregious harm" has resulted. Hence, no "fundamental error" is shown. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). Following *Almanza, supra,* we do not reach the constitutionality of the parole law instruction. The judgment and sentence of the court below is affirmed.

AFFIRMED.

BURGESS, J., dissenting.

I respectfully dissent to the majority's disposition of the points of error relating to the jury charge pursuant to TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4 (Vernon Supp.1987). Until settled by our Court of Criminal Appeals, I continue to dissent as noted in *Boudreaux v. State*, 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.). I would also hold, when necessary, that the instruction is so erroneous and violative of due process that it is fundamental error which rises to egregious harm under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984).

Further, on the authority of *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App.1987), I would hold it unconstitutional as violative of the separation of powers doctrine.